**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-02870-MSK

**ROXANNE R. RYAN,**

    **Plaintiff,**

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

    **Defendant.[1]**

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Roxanne R. Ryan's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c.. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.    Jurisdiction**

Ms. Ryan filed a claim for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively. She asserted that her disability began on January 1, 2005, but modified this date to April 30, 2005. After her claim was initially denied, Ms. Ryan

---

[1] At the time Ms. Ryan filed her initial appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on June 11, 2009.

After the hearing, the ALJ issued a decision which found that Ms. Sutherland met the insured status requirements through December 31, 2010. The Decision also found that: (1) Ms. Ryan had not engaged in substantial gainful activity since April 30, 2005; (2) she had several severe impairments - lumbar spine degenerative disk disease, mild chronic obstructive pulmonary disease ("COPD"), tobacco abuse, major depressive disorder and anxiety with panic disorder and agoraphobia; (3) she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1 ("the Listings"); (4) Ms. Ryan had the residual functional capacity ("RFC") to perform unskilled sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a)[2], but with the following additional limitations: occasional stooping, balancing, kneeling, crouching, crawling and climbing stairs or ramps; no climbing of ladders, ropes or scaffolds; the ability to sit after standing, or standing after sitting, for brief periods of 1 to 2 minutes every hour or so during the work day; and no concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation and cold temperature extremes; (5) she was unable to perform her past relevant work; and (6) she was not disabled because she was able to perform jobs that existed in significant number in the national economy, including order clerk, telephone quotation clerk and final assembler.

---

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

The Appeals Council granted Ms. Ryan's request for review of the Decision. In an order dated July 8, 2010, the Appeals Council remanded her case with the following instructions to the ALJ:

> (1) Evaluate the third party lay witness (other source) statements of Ms. Lybarger (Exh. 10E/2 and 6) in accordance with 20 CFR 404.1513(d) and 416.913(d) and Social Security Ruling 06-03p.
>
> (2) Obtain medical expert evidence in order to clarify the nature and severity of [Ms. Ryan's] alleged mental impairments per 20 C.F.R. 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p, as well as to determine whether any of her medically determinable impairments meet or equal a listing (either alone, or in combination) in accordance with Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. 404.1525 and 404.1526), and if not, to determine whether any such impairments impose significant functional limitations (either alone, or in combination).
>
> (3) Give further consideration to [Ms. Ryan's] maximum mental [RFC] during the entire period at issue and provide rationale with specific references to evidence of record in support of all assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nonexamining source opinions of the State agency medical consultants, Drs. Bailey and Fleming (Exhs. 3F and 10F) pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.
>
> (4) If warranted by the expanded record, obtain supplemental evidence from a vocational expert in order to clarify the effect of all assessed limitations, both exertional and nonexertional, on the claimant's occupational base (per Social Security Rulings 83-14 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information contained in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

The ALJ held a second hearing on February 9, 2011, and issued a second decision. This Decision again found that (1) Ms. Ryan met the insured status requirements through December 31, 2010; (2) Ms. Ryan had not engaged in substantial gainful activity since April 30, 2005; (3)

she had a number of severe impairments - chronic low back pain with left lower extremity radicular symptoms secondary to degenerative disk and joint disease in her lumbosacral spine, chronic obstructive pulmonary disease (COPD), a history of tinnitus, and dysthymic disorder with recurrent major depressive disorder and anxiety with panic attacks; and (4) none of these impairments, whether individually or in combination, met or medically equaled any of the severe impairments including in the Listings.  But rather than finding that Ms. Ryan had the residual functional capacity ("RFC") to perform unskilled, **sedentary work**, the Decision determined that she could unskilled or low skilled, **light work** as defined in 20 C.F.R. § 404.1567(b) with limitations of occasionally balancing, stooping kneeling, crouching, crawling and climbing ramps or stairs; and never climbing ladders, ropes or scaffolds.  With this RFC, the Decision determined that Ms. Ryan was not disabled because she was able to perform two of her past jobs, cashier II and informal waitress.

The Appeals Council denied Ms. Ryan's request for review of the second Decision. Consequently, the Decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  Ms. Ryan's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Material Facts

The material facts are as follows.

Ms. Ryan was born in 1973.  She has some college education and completed her certification as a nursing assistant.  Her prior employment includes work as construction worker, stock clerk, informal waitress, cashier and nursing assistant.

### A. Treatment Records

Ms. Ryan has a history of depression and anxiety. She was treated for these mental health issues by Dr. Adams, her primary care physician, as well as emergency care providers. Dr. Adams saw her for depression in August 2004, prescribing her Ambien and Wellbutrin. In March of 2005 she was taken to the emergency room for a drug overdose and diagnosed with depression. Two months later she went to the emergency room and was treated for a panic attack. When examined by Dr. Adams shortly after, he prescribed her Zoloft and wrote that "this truly is a panic attack disorder." In October 2006, he diagnosed Ms. Ryan with bipolar disorder and prescribed her Effexor and lithium. Two months later, he wrote that the Effexor seemed to be working well and that Ms. Ryan never took her lithium. Dr. Adams wrote in a September 2007 treatment note that Ms. Ryan had a flattened affect and sad mood. She told him in July 2008 that she continued to use Xanax and Valium for anxiety attacks. A treatment note from January 2009 describes Ms. Ryan as feeling "blah". In March of that year, Dr. Adams filled out an RFC questionnaire with Ms. Ryan which lists anxiety attacks as a diagnosis and concludes that her anxiety would limit her ability to handle even moderate stress. Finally, a medical record from the Evanston Community Health Center included the following statement: "Psychiatric: No symptoms of change in sleep pattern, anxiety, difficulty in focusing, depression, moodiness, suicidal thoughts or attempts, obsessive thoughts, compulsions, disturbing thoughts or feelings."

### B. Psychological Evaluations

The earliest psychological evaluation addressing Ms. Ryan's depression and anxiety is contained in a December 2006 report from Dr. Manwill. Based on the results of his examination, he diagnosed Ms. Ryan with panic disorder with agoraphobia, dysthymic disorder and major depressive disorder. He concluded that she was able to understand, carry out and remember

simple instructions, respond appropriately to coworkers and handle work pressure and changes in work routine. Dr. Manwill evaluated Ms. Ryan a second time in January 2010. An adult mental status exam was normal, except for depressed mood and poor concentration. Dr. Manwill again diagnosed her with panic disorder, dysthymic disorder and major depressive disorder, but did not specifically outline functional limitations and did not compare Ms. Ryan's impairments with any of the impairments found in the Listings.

In addition to Dr. Manwill's psychological evaluation, the record also contains reports from medical consultants employed by the state Disability Determination Service. In January 2007, Dr. Bailly completed psychiatric review technique and mental RFC assessment forms. Dr. Bailly concluded that Ms. Ryan was not significantly limited in her understanding and memory or her concentration and persistence, save that she was moderately limited in her ability to work in coordination with or proximity to others without being distracted. She also concluded that Ms. Ryan had moderate limitations in the ability to interact appropriately with the public, accept instructions and respond appropriately to criticism, and get along with coworkers without distracting them or exhibiting behavioral extremes. Dr. Bailly based these findings on a review of the medical record. She ultimately concluded that Ms. Ryan had no restrictions in her activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence and pace, no episodes of decompensation and had the ability to perform simple, routine work with limited social contact. Drs. Mutter and Fleming, having reviewed the same evidence as Dr. Bailly, came to identical conclusions regarding Ms. Ryan's functional capacity. In none of the reports from these medical consultants were Ms. Ryan's impairments compared with any of the impairments in the Listings.

Finally, after the Appeals Council issued its remand order, Dr. Jett examined Ms. Ryan at the request of the Disability Determination Service.  Based on this January 2011 examination, Dr. Jett diagnosed Ms. Ryan with panic disorder and dysthymic disorder.  She also made the following conclusions: Ms. Ryan had mild limitations in her ability to understand, remember and carry out simple instructions; moderate limitations in her ability to make judgments on simple work decisions as well as understand, remember and carry out complex instructions; and marked limitations on her ability to make judgments on complex work decisions. She further concluded that Ms. Ryan had mild limitations in the ability to respond appropriately to usual work situations and changes in routine in addition to marked limitations in the ability to interact appropriately with the public, supervisors and co-workers.  Dr. Jett based these conclusions on Ms. Ryan's anxiety, irritability, poor memory and a lack of inhibition in speaking her mind.  As with the other psychological evaluations described above, Dr. Jett did not include a comparison of Ms. Ryan's impairments with those found in the Listings.

**III.     Issues Presented**

Ms. Ryan raises five challenges to the Commissioner's Decision: (1) the ALJ failed to follow the Appeals Council's order to obtain medical expert testimony, as required by SSR 96-6p; (2) the ALJ failed to include a function-by-function analysis of Ms. Ryan's mental health limitations in the RFC finding and in the assessment of Ms. Ryan's past relevant work at Step 4; (3) the ALJ's Step 4 findings are inconsistent with Dr. Manwill's opinion, to which the ALJ gave substantial weight; (4) the ALJ failed to give the required controlling weight to the opinion of Ms. Ryan's treating physician; and (5) the ALJ's credibility findings are not based on substantial evidence.

Based on a plain reading of the Appeals Council's remand order, Ms. Ryan's first challenge requires reversal and remand. Because resolution of this issue on remand may affect the ALJ's subsequent findings, the Court does not address Ms. Ryan's remaining challenges.

### IV. Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

### V. Discussion

In her first challenge, Ms. Ryan argues that Dr. Jett's report did not satisfy the second paragraph of the Appeals Council's remand instructions, which required the ALJ to obtain the testimony of a medical expert regarding the functional limitations of Ms. Ryan's mental impairments as well as the medical equivalency of Ms. Ryan's mental impairments to the Listings. The Commissioner responds that Dr. Jett's medical report satisfied the Appeals Council's instructions, as Dr. Jett was a medical consultant who based her report on a psychological evaluation of Ms. Ryan.

Thus, the question is whether the form and content of Dr. Jett's opinion satisfied the Appeals Council's remand order. Based on a plain reading of the instructions and the regulations cited therein, the ALJ did not meet the basic requirements of the Appeals Council's order.

Technically, the ALJ did not comply with the requirements of the remand order. It required that the ALJ obtain "medical expert evidence" pursuant to SSR 96-6p. SSR 96-6p defines a "medical expert" as an expert witness who testifies during a hearing, rather than an advisor who does not. SSR. 96-6p, n. 2. Presumably, in citing to this ruling, the Appeals Council anticipated that the opinion of the expert would be presented at a hearing. However, Dr. Jett did not testify during the second hearing.

Putting aside the technicality, however, Dr. Jett's report was not sufficient to comport with the remand order. The Appeals Council's remand order requested a medical expert's opinion to address two issues: "to clarify the nature and severity of [Ms. Ryan's] alleged mental impairments" and "to determine whether any of [Ms. Ryan's] medically determinable impairments meet or equal a listing." In making this request, the Appeals Council cited to 20 C.F.R. § 404.1527(f)[3], which states, in part, that "[ALJs] may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." Based on the Appeals Council's specific request and subsequent citation to § 404.1527(e), it would appear that the Appeals Council wanted an expert medical opinion that not only evaluated Ms. Ryan's mental impairments, but also compared these impairments to the Listings. Although Dr. Jett evaluated Ms. Ryan's mental impairments and offered both diagnoses and functional limitations, she did not compare Ms. Ryan's mental impairments with any of the impairments outlined in the Listings. Although the ALJ makes the ultimate decision as to whether one or

---

[3] This section was relabeled in 2012 as § 404.1527(e), with the text remaining the same.

more impairments meets or is medically equivalent to a Listing (20 C.F.R. § 404.1526(e)), "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."  SSR 96-6p.  Because Dr. Jett's report did not include an equivalency analysis, it did not meet the requirements of the remand order or Social Security policy.  Consequently, reversal and remand for further proceedings is required.

Error at Step three of the sequential analysis must be corrected before meaningful review of the Decision's analysis with regard to subsequent steps.  For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED.**  The Clerk shall enter a Judgment in accordance herewith.

DATED this 25th day of March, 2014

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge